David Lee NEIGHBORS and, Leslie Ann Neighbors, Plaintiffs,

v.

PENSKE LEASING, INC., a Pennsylvania Company; National Steel Corporation, a Delaware Corporation; Transportation and Material Handling, a Division of National Steel Corporation; CRA Trailers, Inc., a Georgia Corporation f/k/a Great Dane Trailers, Inc.; General Electric Capital Corporation, a Delaware Corporation; Sturdy–Lite, Inc., a Tennessee Corporation; DNN Galvanizing Corporation, an Ontario Corporation; and DNN Galvanizing Limited Partnership, an Ontario Limited Partnership; Jointly and Severally, Defendants.

No. 97–CV–75449–DT.

United States District Court,
E.D. Michigan,
Southern Division.

March 18, 1999.

Fred A. Custer, Materna, Custer and Associates, Madison Heights, MI, for Plaintiffs.

Bret A. Schnitzer, Melican & Schnitzer, P.C., Detroit, MI, Co–Counsel for Plaintiffs.

Gerald V. Padilla, Siemion, Huckabay, Baiter, Padilla, Morganti & Bowerman, P.C., Southfield, MI, for DNN.

Dennis G. Bonucchi, Gerald E. Szpotek, Jr., Clark Hill, P.L.C., Birmingham, MI, for Defendants National Steel Corporation, Transportation and Material Handling, a Division of National Steel Corporation, Penske Truck Leasing Co., L.P. and General Electric Capital Corporation.

Elaine S. Wright, Darice E. Weber, Bowman and Brooke L.L.P., Detroit, MI, for Defendants Great Dane.

Jerome A. Galante, Plunkett & Cooney, PC, Detroit, MI, for Sturdy–Lite, Inc.

## OPINION

DUGGAN, District Judge.

This matter is currently before the Court on defendants DNN Galvanizing Corporation's and DNN Galvanizing Limited Partnership's (collectively "defendants") motion to dismiss and/or partial motion for summary judgment. Defendants contend that this Court is without personal jurisdiction over them, venue is improper in this district, and the Canadian statute of limitations has run on plaintiffs' cause of action. In addition, defendants seek an order from this Court quashing service of process for an alleged failure to comply with Article 3 of the Hague Convention. Plaintiffs have filed a response in opposition to defendants' motions. The Court entertained oral argument on the defendants' motions on December 17, 1998. Because the Court is without personal jurisdiction over the DNN defendants, the Court grants the DNN defendants' motion to dismiss for lack of personal jurisdiction.

### Background

Plaintiffs' complaint is premised upon a July 31, 1995 accident in which plaintiff David Neighbors sustained an injury while climbing onto the bumper of a flat bed trailer. Plaintiff is a truck driver who transported a load of steel on the flat bed trailer and delivered it to the DNN defendants' premises in Windsor, Ontario, Canada. Plaintiff was employed by Vanguard Services and the trailer plaintiff was operating at the time of his injury was owned by defendants Penske Leasing, Inc. ("Penske") and General Electric Capital Corporation ("General Electric"). (Pls.' Br. in Opp. to Dfs.' Part.Mot.Summ.J. at 9). Penske and General Electric leased

the trailer to defendants Transportation and Material Handling ("TMH") and National Steel, Inc. ("National"). *Id.*

At the time of the injury, the flat bed trailer was located on the DNN defendants' premises in Windsor. The DNN defendants are engaged in the business of galvanizing steel. According to defendants, "[s]teel companies bring rolls of steel to DNN on flat bed trailers. The steel is dropped off for processing and picked up after it has been galvanized." (Dfs.' Br. in Supp.Part.Mot.Summ.J. at 9). On the date of the injury, plaintiff was delivering a load of steel to defendants and attempted to climb onto the flat bed trailer to remove a tarp covering the steel. Plaintiff allegedly slipped and fell during this process sustaining severe injury.

### Discussion

#### Personal Jurisdiction

The DNN defendants seek dismissal of this action contending that this Court is without personal jurisdiction. According to defendants, the facts in the record will not support this Court's exercise of either general or limited[1] personal jurisdiction. With respect to the exercise of general jurisdiction, defendants maintain that they are not incorporated in the state of Michigan, they have not consented to suit in Michigan, nor do they carry on "continuous or systematic" business in the state of Michigan. (Dfs.' Br. in Supp.Part.Mot. Summ.J. at 13). In addition, defendants maintain that the facts do not warrant the exercise of limited jurisdiction. Defendants maintain that they do not advertise in Michigan, own any delivery trucks in Michigan, nor do they have a sales representative present in Michigan. Further, defendants allege that the tort forming the

subject matter of the lawsuit occurred in Windsor, Ontario, Canada, and defendants do not contract to insure any person in the state of Michigan, nor do they enter into contracts for performance of services in the state of Michigan. *Id.*

The plaintiff has the burden of establishing the Court's jurisdiction over the defendants, and when faced with a properly supported Rule 12(b)(2) motion, the plaintiff must set forth facts establishing personal jurisdiction. *Id.* at 1458. Where, as in this case, the court does not hold an evidentiary hearing on the matter, "the court must consider the pleadings and affidavits in a light most favorable to the plaintiff.... To defeat such a motion, [the plaintiff] need only make a *prima facie* showing of jurisdiction." *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir.1998) (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)). A *prima facie* showing requires the plaintiff to " 'demonstrate facts which support a finding of jurisdiction....' " *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir.1980) (quoting *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981)).[2] Furthermore, a court does not weigh the controverting assertions of the party seeking dismissal. *Dean*, 134 F.3d at 1272 (quoting *CompuServe, Inc.*, 89 F.3d at 1262).

Therefore, in order to decide this motion, the Court must ascertain only whether plaintiffs have established a *prima facie* case of personal jurisdiction. The Court will review the pleadings, including the deposition testimony offered by plaintiffs, in a light most favorable to plaintiffs, to determine whether plaintiffs have adduced

---

1. The Court notes that Michigan courts use the term limited personal jurisdiction synonymously with the term "specific" personal jurisdiction. *See Green v. Wilson*, 455 Mich. 342, 565 N.W.2d 813 (1997). Throughout this opinion, the Court will use the term "limited" personal jurisdiction to refer to "specific" personal jurisdiction.

2. If a district court does hold an evidentiary hearing on the personal jurisdiction issue, the plaintiff must show by a preponderance of the evidence that jurisdiction exists. *Welsh*, 631 F.2d at 439.

sufficient facts on which the Court can conclude it is appropriate to exercise personal jurisdiction over the DNN defendants.

Plaintiffs argue for the presence of both general and limited jurisdiction. The Due Process clause permits a Court to exercise both general and limited jurisdiction. However, "[i]n analyzing the due process limits of personal jurisdiction, a distinction is made between 'general' jurisdiction and 'specific' jurisdiction." *Conti v. Pneumatic Prod. Corp.*, 977 F.2d 978, 981 (6th Cir.1992) (citing *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir.1989)). "General jurisdiction exists when a defendant has 'continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims.' " *Aristech Chem. Int'l, Ltd. v. Acrylic Fabricators*, 138 F.3d 624, 627 (6th Cir.1998) (quoting *Kerry*, 106 F.3d at 149). By contrast, "[s]pecific jurisdiction ... subjects the defendant to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contacts with the forum" *Id.* (quoting *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 & n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

◼ In Michigan, general personal jurisdiction over a corporate defendant is governed by MICH.COMP.LAWS § 600.711 which provides:

> The existence of any of the following relationships between a corporation and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise general personal jurisdiction over the corporation and to enable such courts to render personal judgments against the corporation.
>
> (1) Incorporation under the laws of this state.
>
> (2) Consent, to the extent authorized by the consent and subject to the limitation provided in section 745.

> (3) The carrying on of a continuous and systematic part of its general business within the state.

MICH.COMP.LAWS § 600.711. With respect to § 600.711(1), it is clear from the record that the DNN defendants are not incorporated in the state of Michigan. The DNN defendants have not consented to suit in the state of Michigan so as to fall within the purview of § 600.711(2). Further, the DNN defendants do not carry on a "continuous and systematic" portion of their business in Michigan. As discussed *infra*, the record reveals that the DNN defendants galvanize steel which has been transported to their facility in Windsor, Ontario. The DNN defendants do not engage in any solicitation of business in the state of Michigan; nor do they contract for the delivery of the steel to Michigan. Therefore, in view of the record currently before the Court, this Court is unable to exercise general personal jurisdiction over the defendants.

In addition, plaintiffs argue that the facts of the present case warrant this Court's exercise of limited jurisdiction over the DNN defendants. The exercise of limited jurisdiction over a corporate defendant is governed by MICH.COMP.LAWS § 600.715 which provides:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
>
> (1) The transaction of any business within the state.
>
> (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.
>
> (3) The ownership, use, or possession of any real or tangible personal property situated within the state.

(4) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

MICH.COMP.LAWS § 600.715. Plaintiffs contend that the DNN defendants transact business within the state as evinced by the joint venture relationship between DNN and defendant National. Second, plaintiffs contend that in order to effectuate the joint venture, DNN engages in daily telephone, mail, and electronic contact with defendant National in Michigan. Therefore, plaintiffs argue that subsection one of Michigan's long-arm statute is satisfied.

"A federal district court sitting in diversity must apply the law of the forum state to determine whether it may exercise jurisdiction over the person of a non-resident defendant. However, constitutional concerns of due process limit application of this state law." *Theunissen v. Matthews,* 935 F.2d 1454, 1459 (6th Cir.1991) (citations omitted). In Michigan, "[a] personal jurisdiction analysis is a two-fold inquiry: (1) do the defendant's acts fall within the applicable long-arm statute, and (2) does the exercise of jurisdiction over the defendant comport with due process?" *Green v. Wilson,* 455 Mich. 342, 347, 565 N.W.2d 813 (1997) (citing *Starbrite Distributing, Inc. v. Excelda Mfg. Co.,* 454 Mich. 302, 562 N.W.2d 640 (1997)). Therefore, in this Court, the defendant must be subject to the Court's jurisdiction under both Michigan's long-arm statute and the Due Process Clause. *See Kerry Steel, Inc. v. Paragon Indus., Inc.,* 106 F.3d 147, 149 (6th Cir.1997).

■ The Michigan Supreme Court has construed Michigan's long-arm statutes to bestow the broadest possible grant of personal jurisdiction consistent with due process. *Sifers v. Horen,* 385 Mich. 195, 188 N.W.2d 623, 624(Mich.1971). Where a state's long-arm statute extends to the constitutional limits of the Due Process

Clause, the two inquiries merge; courts must only determine whether an assertion of personal jurisdiction over the defendant violates the Due Process Clause. *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.,* 91 F.3d 790, 793 (6th Cir.1996).

The Due Process Clause requires that plaintiffs establish a defendant's minimum contacts with the forum state sufficient to comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). The Sixth Circuit requires satisfaction of the following three criteria:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Indus.,* 401 F.2d 374, 381 (6th Cir.1968). Because the Court believes that its exercise of personal jurisdiction over the DNN defendants would offend the Due Process Clause, the Court will confine its analysis to the constitutionality of personal jurisdiction.

■ In order to be subject to personal jurisdiction, a defendant must "purposefully avail[ ] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). On the facts presented by the parties in the pleadings, it is clear that the DNN defendants have not "purposefully availed" themselves of the benefits or protections of Michigan law.

Plaintiffs stress that the DNN defendants operate a steel galvanizing facility at which a substantial portion of National's steel is galvanized. However, the Sixth Circuit has held that the amount of business conducted with the non-resident defendant is not supportive of a purposeful availment argument. "It is the 'quality' of [the] 'contacts,' and not their number or status, that determines whether they amount to purposeful availment." *CompuServe, Inc.*, 89 F.3d at 1265 (quoting *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1119 (6th Cir.1994) and *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1301 (6th Cir.1989), *cert. denied*, 494 U.S. 1056, 110 S.Ct. 1525, 108 L.Ed.2d 764 (1990)).

In addition, the record is devoid of any evidence that DNN solicited this business from National in Michigan. The Sixth Circuit addressed the relevancy of solicitation in determining the existence of purposeful availment and stated, "the question of which party solicited the business interface is irrelevant, *so long as defendant then directed its activities to the forum resident.*" *Lanier v. American Bd. Of Endodontics*, 843 F.2d 901, 910 (6th Cir.1988) (emphasis added) (citing *Southern. Machine*, 401 F.2d at 382.). There are no facts presented by the pleadings that show the defendants directed their activities to National. In fact, DNN notes in its supplemental brief that it is merely set up to galvanize the steel and does not even own the trucks on which the steel is transport-ed to its Windsor, Ontario facility. (Dfs.' Supp.Br. in Sup. Mot. for Part. Summ. J. at 3).

While it is true that National and DNN are engaged in a joint venture, plaintiffs have failed to demonstrate how this venture implicates any contact on behalf of DNN with the forum state. Plaintiffs have failed to present to the Court any authority for the proposition that the existence of a joint venture between a Michigan corporation and a Windsor, Ontario corporation, standing alone, is sufficient to subject the Canadian corporation to personal jurisdiction.[3]

Instead, to establish its' *prima facie* case, plaintiffs rely on the deposition testimony of Pamela Bone, shipping administrator of DNN Limited Partnership and Come Belisle, vice president and general manager of DNN Limited Partnership, both of whom described the nature of the defendants' contacts with the state of Michigan.[4] According to Mr. Belisle, DNN Limited Partnership is engaged in the business of galvanizing steel for two primary customers, defendant National, and Dofasco. (Belisle Dep. at 5). Defendant National is a steel mill located in Ecorse, Michigan. (Belisle Dep. at 7). According to Belisle, defendant DNN Limited Partnership receives steel from defendant National and Dofasco and applies a zinc coating to the steel and the steel is then returned to the respective corporation. (Belisle Dep. at 5). In addition, Ms. Bone testified that defendant National

**3.** Although not issues of joint venture, the courts have addressed related issues of whether controlling interests or ownership of shares constitutes purposeful availment. The Sixth Circuit has held that controlling interests do not constitute purposeful availment. *See Dean*, 134 F.3d at 1273-4 ("a company does not purposefully avail itself merely by owning all or some of a corporation subject to jurisdiction."). The United States Supreme Court has held that ownership of shares does not constitute purposeful availment. *See Shaffer v. Heitner*, 433 U.S. 186, 216, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) (ownership of shares does not constitute purposeful availment). Therefore, it is unlikely that a joint venture, standing alone, is sufficient to demonstrate purposeful availment.

**4.** The Court is unable to glean from the pleadings before it the precise nature of the corporate relationship existing between DNN Galvanizing Corporation and DNN Limited Partnership. However, the Court notes that in a July 17, 1998 Order from Magistrate Judge Komives permitting plaintiffs to file a third amended complaint, Judge Komives states that DNN Galvanizing Corporation is the general partner of DNN Galvanizing Limited Partnership. (Df. National Steel's Mot. to Strike Ex. A).

places a work order with defendant DNN Limited Partnership via facsimile which is then filled at the Windsor facility. (Bone Dep. at 6–7). Ms. Bone also stated that regular telephone conversations occur between National in Ecorse, Michigan and DNN Limited Partnership in Windsor, Ontario. (Bone Dep. at 8).

Despite plaintiffs' reliance on it to the contrary, this Court is of the opinion that the deposition testimony of Ms. Bone and Mr. Belisle, viewed in a light most favorable to plaintiffs, fails to reveal the existence of any purposeful availment of the forum state by defendants. The plaintiffs' reliance on the frequent communications between DNN and National is misplaced. In *Walker Motorsport, Inc. v. Henry Motorsport, Inc.*, No. 95–2250, 110 F.3d 66, 1997 WL 148801, at *3 (6th Cir. March 31, 1997), the Sixth Circuit rejected a similar argument where a plaintiff attempted to rely on telephone correspondence with a sponsor in Michigan stating, " '[t]he telephone calls and letters on which the plaintiff's claim of jurisdiction primarily depends strike us as precisely the sort of 'random,' 'fortuitous' and 'attenuated' contacts that the *Burger King* Court rejected as a basis for haling non-resident defendants into foreign jurisdictions.' " *Id.* (quoting *LAK, supra*). *See also Reynolds*, 23 F.3d at 1119 (holding that phone calls and letters alone cannot provide the requisite minimum contacts to satisfy due process).

Moreover, the Court finds plaintiffs' reliance upon the Sixth Circuit's decision in *Theunissen v. Matthews*, 935 F.2d 1454

(6th Cir.1991) similarly unavailing. In *Theunissen*, a truck driver injured his hand while delivering a load of lumber to a Canadian corporation for processing and ultimate delivery to Westland, Michigan. The Canadian corporation moved for dismissal contending that the Court was without personal jurisdiction. The Sixth Circuit denied defendant's motion to dismiss for lack of jurisdiction because the Court was persuaded by the quality of defendant's alleged contacts with the State of Michigan. Most notably, the court highlighted, "Matthews has maintained a residence in Michigan and contracted with common carriers and other firms. These allegations alone might suffice to establish purposeful availment." *Theunissen*, 935 F.2d at 1460. The truck driver in *Theunissen* was employed by a company with whom the defendant Matthews contracted to transport lumber to and from its Canadian facility.

By contrast, in the case *sub judice*, plaintiff was not employed by a transportation company in contract with the DNN defendants. The trailer operated by plaintiff was owned by defendants Penske and General Electric and leased to defendants TMH and National. The DNN defendants do not engage in any contract for the transport of steel to and from their facility.[5] Further, as previously highlighted by the Court, plaintiff has failed to establish any contact on the part of defendants with the State of Michigan. Thus, *Theunissen* is factually inapposite to the instant case.[6]

In sum, as the presence of the first *Southern Machine*[7] factor is completely

---

5. Plaintiffs allege that "DNN specifically contacted Michigan-based TMH to order transportation of the steel—during which Plaintiff was injured." (Pls.' Sec.Supp.Br. in Opp. Dfs.' Mot.Part.Summ.J. at 4) (citing Bone Dep. at 8–9). A review of this portion of Bone's deposition testimony reveals that she calls TMH, on behalf of defendant National, to apprise TMH as to whether a load is available for pick-up on a certain day. Bone did not testify as to the presence of any transportation agreement between the two companies.

6. The Court notes that on appeal following remand, the Sixth Circuit affirmed the district court's determination that it lacked personal jurisdiction over the Canadian defendant. *See Theunissen v. Matthews*, No. 92–1271, 992 F.2d 1217, 1993 WL 100060 (6th Cir. Apr.5, 1993).

7. As the Court has determined that the DNN defendants did not purposefully avail themselves of the privilege of acting in the forum state or causing a consequence in the forum state, the Court will not engage in an analysis

lacking, the Court will not engage in a discussion of the remaining factors. In this Court's opinion, its exercise of personal jurisdiction over the DNN defendants would offend the Due Process Clause; thus, the Court declines to exercise jurisdiction over the DNN defendants and will dismiss plaintiffs' complaint as to the DNN defendants.

### Conclusion

For the reasons stated herein, the DNN defendants' motion to dismiss is granted.

An Order consistent with this opinion shall issue forthwith.

of the remaining *Southern Machine* factors. However, the Court concludes that it logically follows that the record fails to evince that plaintiff's cause of action for personal injury arose from any activity on behalf of the DNN defendants in Michigan. Thus, the Court also concludes that the exercise of jurisdiction over the DNN defendants would be unreasonable given the absence of connection between the forum state of Michigan and any acts of the DNN defendants.